UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11917-GAO

MICHON M. ANDERSON,
Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
March 31, 2014

O'TOOLE, D.J.

I. **Introduction**

The plaintiff, Michon M. Anderson, appeals the denial of her application for Supplemental Security Income ("SSI") benefits by the Commissioner of Social Security ("Commissioner"). Anderson applied for SSI benefits on January 5, 2009, claiming she had become disabled on November 1, 2007. (Administrative Tr. at 23 [hereinafter R.].)[1] Anderson's application was denied at the initial level of review on September 28, 2009, and upon reconsideration on March 4, 2010. (Id.) On March 19, 2010, Anderson filed a written request for hearing before an Administrative Law Judge ("ALJ"). (Id.)

The hearing was held on April 7, 2011 before ALJ Edward G. Hoban. (Id.) Anderson was represented by attorney Bainbridge Testa. (Id. at 40.) Anderson provided oral testimony at the hearing, as did a vocational expert. (Id. at 64.) On June 24, 2011, ALJ Hoban issued a written

---

[1] The administrative record has been filed electronically (dkt. no. 10). In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

decision denying Anderson SSI benefits because, although Anderson could no longer perform her past relevant work due to several severe impairments, there were a number of jobs she could perform. (Id. at 30-31.) As such, ALJ Hoban determined that a finding of "not disabled" was appropriate. (Id. at 31.)

Before the Court is a motion for order to reverse (dkt. no. 13), and alternatively a motion for an order to affirm (dkt. no. 20), ALJ Hoban's decision. The Court now affirms the decision because there is substantial evidence in the administrative record to support it and no error of law was made.

## II. Factual Background

Anderson was 47 years old when the ALJ issued the final decision denying her application for SSI benefits. (Id. at 32, 142.) She graduated from high school and completed two years of college, but did not obtain a degree. (Id. at 166.) Anderson had been incarcerated for a total of 11 years: from 1990 to 1994, 1996 to 1997, and 1998 to 2005. (Id. at 44.) She therefore had limited work history prior to the alleged onset of her disability on November 1, 2007. (Id. at 43.) Anderson described her disability as: "[d]iabetes[,] depression[,] ptsd, Hepatitis B, left knee problems." (Id. at 160.) She claimed that, as a result of her conditions, her ability to work was impaired because she has "a hard time getting out of bed . . . difficulty keeping [her] blood sugars under control . . . [is] not reliable to show up." (Id.)

2

A.   Physical Impairments

   1.   *Diabetes*

Anderson has had Type 1 diabetes since the age of 16. (Id. at 458.) In July 2009, Dr. Emily Liu diagnosed Anderson's diabetes as under "suboptimal" control. (Id. at 460.) Dr. Liu's notes indicate that Anderson's blood sugar was usually between 300 and 400, but was in the 30's during a hospitalization while visiting the West Coast in May 2009. (Id. at 458.) Anderson denied any numbness in her extremities and stated that she was not interested in an insulin pump. (Id.) In September 2009, Anderson was examined by Dr. Daniel Powers.[2] (Id. at 454.) She described a recent hospitalization due to high blood sugars, but indicated that she "feels better and [her blood] sugars are normalizing." (Id.). She denied any issues with her lower extremities. (Id.)

In January 2010, Anderson had a follow-up with Dr. Powers. (Id. at 429.) Anderson reported no new complaints and indicated that she felt well. (Id.) In March 2010, she was seen by Dr. Karen Mello for a diabetic foot ulcer. (Id. at 24, 621.) In May 2010, Anderson told Dr. Liu that her depression makes it hard to control her diabetes and that she often overcorrected her insulin levels when she had low blood sugar. (Id. at 584.) Dr. Liu noted that Anderson was still unable to properly control her diabetes and continued to mismatch her carbohydrate and fast acting insulin drugs. (Id.) Dr. Liu also noted that Anderson missed her insulin doses a few times a week, which "certainly leads to hyperglycemia." (Id.) In September 2010, Anderson was seen

---

[2] The medical record to this visit lists Dr. Powers as Anderson's primary care physician ("PCP"). Other medical records list Dr. Ernesto Negron as Anderson's PCP, and Anderson's brief repeatedly asserts that Dr. Negron is in fact the PCP. (E.g. R. at 572; Plaintiff's Mot. for Reversal at p. 4, (dkt. no. 13).) In Dr. Negron's Residual Functional Capacity Form, however, he indicates that he based his opinion on a single visit with Anderson in September 2010. (R. at 648.)

3

by Dr. Ernesto Negron. (Id. at 572.) She admitted to Dr. Negron that she was still not following the insulin instructions, and Dr. Negron noted that her diabetes was "uncontrolled." (Id.) In December 2010, Anderson was again seen by Dr. Negron. (Id. at 675). Dr. Negron noted that Anderson's diabetes was now under control, as was her depression. (Id.)

### 2. *Charcot Joint Disease of the Right Foot*

Anderson has a history of bunion issues primarily on her right side. (Id. at 352.) She had bunion surgery in 1996, and she was diagnosed with recurrent bunions with some crossover of her second toe over the third toe on her right foot. (Id. at 415.) She was diagnosed with Charcot joint disease and had surgery on her right foot in March 2010. (Id. at 572, 705.) In September 2010, she had a second surgery on the same foot. (Id. at 701.) Medical records as of January 2011 show interval healing and no signs of recurrent foot problems, although Anderson stated in her testimony that she requires an air cast on her right foot when walking long distances. (Id. at 683, 62.)

### B. Mental Health

### 1. *Depression With Evidence of Personality Disorder*

Anderson was first diagnosed with depression in late 2007 by her therapist, Karen Dude. (Id. at 385.) Anderson reported that in 2008 she had problems with her depression because she had failed to take her medication property. (Id. at 466.) In February 2009, Dr. Joan Kellerman conducted a Psychiatric Review Technique of Anderson, covering the period of December 2008 to August 2009. Dr. Kellerman found that Anderson's depression was "not severe." (Id. at 347.) In March 2009, Anderson was taking the anti-depressant drug Wellbutrin and reported that she was "doing pretty good." (Id. at 515.) In July 2009, Anderson noted that she was feeling better. (Id. at 301.) She continued to see Ms. Dude for individual therapy sessions during 2009, and

reported consistent problems with performing activities of daily living. (Id. at 513, 385.) In July 2009, Anderson was evaluated by Dr. Michael Bohnert at the request of Disability Determination Services. (Id. at 320.) Dr. Bohnert diagnosed Anderson with "moderately severe" depression and a history of antisocial personality traits. (Id. at 323.) He ruled out both post traumatic stress disorder ("PTSD") and personality disorder. (Id.) In December 2009, Anderson reported that she was "doing well" and denied any increase in her depression. (Id. at 435.) In January 2010, Anderson reported that she "often is not motivated to get out of bed" and that she "[w]ants to get back on track." (Id. at 432.) Also in January 2010, Ms. Dude diagnosed Anderson with depression and PTSD as part of a questionnaire supporting Anderson's disability claims. (Id. at 385.) In February 2010, Dr. Michael Maliszewski noted that Anderson had "moderate depression" according to her treatment notes and had only "mild" limitations with regard to activities of daily living ("ADLs"). (Id. at 412.) In February and March 2010, Anderson was trying different medications to get her depression under control. (Id. at 644.) In September 2010, she noted that her depression was getting worse and made it difficult to take her insulin as directed. (Id. at 572.) Anderson's depression was "much better controlled" by December 2010 according to Dr. Negron. (Id. at 675.) However, she again reported depressive symptoms in a March 2011 session with Ms. Dude. (Id. at 688.)

    C.    The ALJ's Decision

ALJ Hoban found Anderson to be suffering from multiple severe[3] impairments, both physical and mental. (Id. at 25.) These impairments limited Anderson's residual function capacity to performing "unskilled sedentary work with simple repetitive tasks with occasional social interactions." (Id. at 30.) The impairments prevented Anderson from returning to her past

---

[3] An impairment, or a combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" (20 C.F.R. § 404.1520(c).)

5

relevant work (as an escrow officer in 1998), but ALJ Hoban found that there were multiple jobs in sufficient supply in the national economy for which Anderson's impairments would not disqualify her. (Id. at 31.) Thus, Anderson was not disabled under the Social Security Act. (Id.)

ALJ Hoban's opinion tracked the five-step sequential evaluation process, mandated by 20 C.F.R. §§ 404.1520(a) and 416.920(a), to determine if Anderson was disabled. (R. at 25-32.) Each step is potentially dispositive; if the claimant is determined disabled (or not disabled) at any step, the inquiry proceeds no further. (20 C.F.R. § 404.1520.) In Anderson's case, ALJ Hoban determined that Anderson was not disabled at step five. (R. at 31.)

The first step requires gauging Anderson's work activity. (Id. at 25.) ALJ Hoban determined that Anderson had not been engaged in "substantial gainful activity"[4] since the alleged onset of her disability, thus the inquiry proceeded to the second step. (Id.)

At the second step, ALJ Hoban found that Anderson had the following severe impairments: "diabetes, Charcot Joint disease of the right foot status-post March, 2010 and September, 2010 surgeries and depression with evidence of a personality disorder (20 C.F.R. [§] 416.920(c)." (Id.)

Step three, like step two, contemplates the severity of the alleged impairment. (20 C.F.R. § 404.1520(a)(4)(iii).) ALJ Hoban found that Anderson's impairments did not meet or medically equal a listed[5] impairment and therefore proceeded to assess Anderson's Residual Functional Capacity[6] ("RFC") before reaching step four. (R. at 28.)

---

[4] Defined by 20 C.F.R. § 416.972 as work activity that is "both substantial and gainful[.]"
[5] See 20 C.F.R. § 404(P)(App. 1).
[6] The determination of a claimant's residual functional capacity will be based on "all the relevant medical and other evidence in [the claimant's] case record, as explained in [20 C.F.R.] § 404.1545." (20 C.F.R. § 404.1520(e).)

ALJ Hoban found that Anderson had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 416.967(a), noting that Anderson is "limited to unskilled, simple repetitive tasks with occasional social interaction with co-workers, supervisors and the public." (Id. at 29).

At the fourth step, the RFC is compared with the past relevant work to determine if the claimant is able to resume that work. (20 C.F.R. § 404.1520(a)(4)(iv).) If the claimant is able to resume past relevant work, she is determined to be not disabled. (Id.) If, conversely, the claimant is unable to resume past relevant work, the inquiry proceeds to the fifth step. (Id.) Vocational expert Jeffrey Goldfarb ("Goldfarb") was asked to evaluate Anderson's past relevant work, age, education, and RFC. (Id. at 64.) Goldfarb's oral testimony focused on Anderson's previous employment as an escrow officer in 1998, which was her only previous substantial employment. (Id.) Goldfarb based his classification on the Dictionary of Occupational Titles, and classified escrow officer as "119.367-010 . . . sedentary and skilled." (Id.) He opined that Anderson could no longer perform that job because it was a skilled position. (Id. at 26.) Adopting Goldfarb's expert opinion, ALJ Hoban found that Anderson was unable to perform her past relevant work. (Id. at 30.)

At the fifth, and final, step the claimant's RFC, age, education, and work experience are considered to determine if she is capable of performing other work presently available in the national and regional economy. (20 C.F.R. § 404.1520(a)(4)(v).) If the claimant can make an adjustment to other work, and such other work is sufficiently available in the national and regional economy, the appropriate finding is "not disabled." (Id.)

Goldfarb averred that a number of jobs in the national economy existed for someone fitting Anderson's age, education, work experience, and RFC. (Id. at 65.) Based on the limitations of "unskilled, simple repetitive tasks with occasional social interaction with co-

workers, supervisors and the public," Goldfarb indicated that Anderson was capable of performing certain sedentary jobs, such as table worker, touch-up inspector, and sealer of packages. (Id. at 65, 29.) Goldfarb stated that over 300,000 such jobs were available nationally, and over 2,300 were available in Massachusetts. (Id.) ALJ Hoban accepted Goldfarb's assertion that Anderson would be able to perform these jobs. (Id. at 30.)

### III. Standard of Review

When reviewing a denial of SSI benefits, the Court will uphold the ALJ's decision when it is supported by substantial evidence. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence exists, and the ALJ's findings must be upheld, if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ's conclusion must be upheld, when supported by substantial evidence, even if the record could "arguably justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Deciding upon issues of credibility is the "prime responsibility" of the ALJ. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The ALJ may rely on the opinions and findings of multiple physicians to ascertain the pertinent medical facts. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). The ALJ, however, has the ultimate responsibility to resolve conflicts between medical opinions to determine whether the applicant is disabled. Rodriguez Pagan, 819 F.2d at 3.

### IV. Discussion

Anderson's single argument for reversing the Commissioner's decision is that ALJ Hoban's conclusion as to her RFC is not supported by substantial evidence (dkt. no. 13). As

discussed below, this Court concludes that the decision as to Anderson's RFC is supported by substantial record evidence and should thus be sustained.

### A. Physical Impairments

The findings as to Anderson's physical impairments are supported by a detailed examination of the record. (R. at 25-28.) ALJ Hoban found that Anderson was suffering from two severe physical impairments: diabetes and Charcot Joint disease of the right foot status-post March 2010 and September 2010 surgeries. (Id. at 25.)

Although there is evidence in the record that Anderson's diabetes was not always well-controlled, it did not prevent her doing "dishes . . . laundry . . . cleaning . . .cooking . . .[and] her own grocery shopping" on a daily basis. (Id. at 27.) ALJ Hoban also noted evidence in the record that showed that Anderson typically walked to her appointments whenever possible. (Id. at 27, 29.) Furthermore, in August 2010, Anderson reported to Ms. Dude that she was working at a job cleaning houses. (Id. at 545.) Thus, there is substantial evidence in the record to support the conclusion that Anderson's diabetes required the RFC determined by ALJ Hoban.[7] 20 C.F.R. §§ 416.909 and 416.922(b); see also Maloon v. Social Sec. Admin. Com'r, No. 1:09-CV-251-JAW, 2010 WL 3274712, *6 (D. Me. Aug 16, 2010) (noting that the burden of persuasion lies with the claimant through each step of the disability process).

ALJ Hoban also found that the claimant had failed to establish that her right foot impairment had "limited substantial gainful employment for [a] consecutive period of [twelve] or more months." (R at 26.) Again, evidence in the record established that Anderson typically walked to appointments and, as of August 2010, was working in some capacity cleaning houses.

---

[7] Anderson also contended that her depression made her unable to control her diabetes. (Id. at 52.) However, as ALJ Hoban noted, the record evinces that Anderson has been able to bring her depression under control with the help of medication. (Id. at 27.) In fact, Dr. Negron noted that her depression was under "much better control" as of December 2010. (Id. at 675.)

(Id. at 27, 29, 545.) Accordingly, Anderson failed to demonstrate that her right foot condition satisfied the twelve month requirement of 20 C.F.R. §§ 416.909 and 416.922(b). ALJ Hoban's RFC, which limits Anderson to sedentary work, accounts for this impairment. (R. at 29.)

In making his RFC determination, ALJ Hoban declined to give controlling weight to Dr. Negron, who Anderson contends was her PCP. (R. at 29.) Although the record contains evidence that either Dr. Negron or Dr. Powers were her PCP, Dr. Negron himself stated that his RFC questionnaire was based on a single visit with Anderson. (Id. at 648.) And, as ALJ Hoban noted, Dr. Negron's assessment was inconsistent with record evidence in this case. (Id. at 29.) Dr. Negron stated that Anderson required a cane to walk and that she could not walk a block without severe pain. (Id. at 649-50.) The record, however, contains numerous examples of Anderson stating that she walked whenever possible.[8] (Id. at 29.)

ALJ Hoban considered physician reports from Dr. Manuelian and Dr. Jao in determining Anderson's RFC. (Id.); see also Rodriguez Pagan, 819 F.2d at 3 (stating that the ALJ has the ultimate responsibility to resolve conflicts between medical opinion). Both concluded that Anderson retained the ability to "perform the full range of light work," with Dr. Manuelian stating that Anderson needed to avoid exposure to vibration and hazards. (Id.) Dr. Jao opined that Anderson could sit for six hours and stand/walk for six hours in a normal workday, while Dr. Manuelian was of the opinion that Anderson could sit for six hours and stand/walk for at least two hours in a typical workday. (Id. at 389, 373). The ALJ could properly have concluded that

---

[8] The Court notes that Dr. Negron's RFC was conducted *after* Anderson's September 2010 right foot surgery, which could explain his reference to her requiring a cane for walking. (R. at 648.) Again, however, Anderson has not produced any evidence to meet her burden to demonstrate that any such impairment caused by the surgery was expected to last for at least twelve continuous months. See 20 C.F.R. §§ 416.909 and 416.922(b); see also Maloon v. Social Sec. Admin. Com'r, No. 1:09-CV-251-JAW, 2010 WL 3274712, *6 (D. Me. Aug 16, 2010) (noting that the burden of persuasion lies with the claimant through each step of the disability process).

Dr. Jao's assessment was supported by substantial evidence in the record, such as Anderson's admission that she typically walked most places, and takes into account Anderson's testimony, where she noted that she did have pain in her right foot. (Id. at 47.) Although Anderson testified that she couldn't stand for more than "30 minutes," this statement was belied by record evidence and ALJ Hoban had the ultimate responsibility of weighing Anderson's credibility on the issue. (Id. at 55); Celebrezze, 349 F.2d at 496.

ALJ Hoban noted that he "gave some credit" to Anderson's testimony, which is why he limited Anderson to sedentary work with unskilled, simple repetitive tasks. (R. at 29.) However, he also properly concluded that some of Anderson's claims were inconsistent with the objective medical evidence of record, and noted that multiple reviewing physicians assessed that Anderson had the ability to perform "the full range of light work." (R. at 29.) His decision made multiple references to the fact that Anderson had previously stated that she typically walked to appointments. (Id. at 27, 29.) Thus, ALJ Hoban made the requisite specific findings as to the "relevant evidence he considered in determining to disbelieve [Anderson]," and his credibility determination was supported by substantial record evidence. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).

ALJ Hoban's assessment of Anderson's RFC thus accommodates Anderson's impairments by limiting her to sedentary work requiring unskilled, simple repetitive tasks. (Id. at 29.)

### B. Mental Health Impairments

ALJ Hoban's findings with respect to Anderson's mental health impairments relied on the reports of Michael Maliszewski, Ph.D., a reviewing agency psychologist (Id. at 396) and Joan Kellerman, Ph.D., another reviewing agency psychologist (Id. at 335). ALJ Hoban also

11

considered reports from Michael J. Bohnert, M.D., a reviewing Disability Determination Services psychologist (Id. at 320), and Karen J. Dude, a licensed clinical social worker (Id. at 385.) Although Ms. Dude opined that Anderson's depression was severe, this opinion was not an "acceptable medical source" and thus not entitled to controlling weight. See Martinez v. Ashtrue, 2013 WL 4010507 at *9 (D. Mass. Aug 2, 2013). Dr. Kellerman, conversely, determined that Anderson's depression was not severe, and Dr. Maliszewski stated that it would have only a mild impact on her ability to perform ADLs. (Id. at 406, 335.) Although Anderson argues that the ALJ should have given greater weight to Dr. Negron's RFC assessment and Anderson's own hearing testimony, the ALJ correctly noted the Dr. Negron himself had found that Anderson's depression was under much better control by December 2010. (Id. at 27.). Thus, there is substantial evidence in the record to support ALJ Hoban's determination that Anderson's depression was not severe. (Id. at 30.) ALJ Hoban's RFC limiting Anderson to occasional social interaction is thus based on substantial evidence.

### C. Vocational Expert Testimony

Anderson also argues that the hypothetical question posed to Goldfarb inaccurately portrayed her symptoms and therefore cannot be relied upon. However, Anderson's failure to object to the hypothetical at the hearing forecloses such an argument. See Torres v. Sec. of Health & Human Servs., 870 F.2d 742, 746 (1st Cir. 1989).

## V. Conclusion

For the foregoing reasons, the plaintiff's Motion to Reverse the Decision of the Commissioner (dkt. no. 13) is DENIED, and the defendant's Motion to Affirm the Commissioner's Decision (dkt. no. 20) is GRANTED. The decision is AFFIRMED.

It is SO ORDERED.

                                                            /s/ George A. O'Toole, Jr.
                                                            United States District Judge